**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STUART WEISBERG,<br><br>           Plaintiff,<br><br>    v.<br><br>NANCY BERRYHILL,<br>Commissioner of Social<br>Security,<br><br>           Defendant. | Case No. 17 C 8699<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

The Administrative Law Judge ("ALJ") found that Plaintiff was not disabled and thus denied him Social Security disability benefits. The Appeals Council denied review and Plaintiff now seeks judicial review of that final decision.

Plaintiff suffers from severe bipolar disorder, Crohn's disease, and congenital nystagmus and refractive error. He also suffers from anemia and depression. He is a widower and is responsible for the care and upbringing of his two children, ages seven and nine. The onset of his disability was April 1, 2013. Plaintiff is a psychiatrist who lost his license because of a two-year psychotic episode which left him delusional and suicidal. He

takes prescription Lithium which causes him to have tremors. After losing his license he commenced door-to-door business sales but was subsequently fired because he was frequently incontinent, and the resulting stress exasperated his depression preventing him from working sufficient hours.

Plaintiff takes infusions of prescription medication (apparently a chemotherapy drug) for his Crohn's disease which at the time of the hearing was every six weeks. This regimen helps the colon but causes symptoms of nausea and fatigue. Even with the infusions, the fecal incontinence persists. The infusions require five hours to administer.

A typical day in his life begins at six in the morning. He lays in bed with nausea until he must defecate which is about six thirty. He spends about an hour on the toilet. He has to take his kids to school at eight, so he has to prepare breakfast and their lunches. After he returns from school he lays down for about an hour and then he usually needs to use the toilet again. Around eleven he can do household tasks without feeling too sick. During the day he uses the bathroom for bowel movements about six times total. He goes to pick up his kids at three. He is usually fatigued when he returns so he takes a nap or watches television with the kids. At five he is feeling "pretty good." He is able

to function "pretty well" and he prepares dinner and helps the kids with their homework. They all go to bed at 9:00 p.m.

He has to defecate between six and ten times per day depending on his activities. The average time for each bowel movement varies between twenty minutes and one hour depending on cramping and pain. Activities increase his need to defecate. Therefore, his ability to walk depends on the availability of a restroom. He is able to drive a car but only during the daylight due to his vision problems. Anxiety and stress tends to throw his mental health into problematic states, either depression or manic. A low stress environment, however, helps keep his mood cycle under control.

In July 2015, Plaintiff began treatment with Dr. Arora, a gastroenterology specialist, for his Crohn's disease and has been treated by him every three months since then. CT enterography of the colon revealed left-sided inflammation, and a colonoscopy revealed microscopic changes but no serious ulcers. Dr. Arora concluded that, despite the infusion treatments, his prognosis for the Crohn's disease was "guarded," with chronic symptoms, including nausea, vomiting, dizzy spells, persistent diarrhea, sleep disturbance, hot and cold spells, bowel incontinence, and fatigue. Dr. Arora further opined that workplace stress would prevent Plaintiff from performing routine, repetitive tasks at a

consistent pace, meet strict deadlines, and perform fast-paced tasks such as working on a production line. He would need to take an average of four unscheduled bathroom breaks during an eight-hour day. He would also need to take, on average, two additional breaks to lie down for an hour due to nausea and fatigue, which normally are severe enough to cause dizziness. Dr. Arora also estimated that Plaintiff would likely be absent from work about four days per month.

Despite the opinion of Dr. Arora to the contrary, the ALJ found that Plaintiff has a Residual Functional Capacity ("RFC") to perform light work and would be "off task" less than 15 percent during an eight-hour work day (approximately one hour and twenty minutes) and would be absent fewer than one and a half days per month. A vocational expert testified that given the above RFC, Plaintiff would be unable to perform his past work but he could perform light, unskilled occupational work, such as a packer, an assembler, or a sorter. The expert further testified that there were many such positions available nationally. However, she also testified that if an individual had to miss more than one and one-half days of work per month, he would be subject to termination.

The reasons the ALJ gave for discounting Dr. Arora's opinions as to Plaintiff's disability were: consultative reports from three

examiners (Dr. Henry Fine and Dr. Roopa Karri, both apparently members of the Arthritis and Internal Medicine Specialists, Ltd., and Dr. Lisa Young of Chicago Glaucoma Consultants), her belief that Arora failed to cite any objective evidence to support his opinions, and the "robust activities" in which Plaintiff engaged. However, none of the consultants expressed any opinions on the extent of Plaintiff's disability. The closest any of them came to the expression of an opinion concerning disability was Dr. Fine's statement that Plaintiff's "psychiatric symptoms along with his medical issues have clearly impacted his functioning" and Dr. Karri's statement "that the claimant can handle funds if granted disability." There was nothing particularly new in Dr. Young's report, as her impression was "Congenital nystagmus and refractive error" and her prognosis was "fair." The "robust activities" which impressed the ALJ was Plaintiff's ability to bathe, do house work, do the laundry, do the dishes, vacuum, take his children to and from school, and feed them and help them with their homework, much of which he did during the 6:00 to 9:00 p.m. window in the evening when he admittedly felt better.

The basis for the ALJ's denial of disability was her finding that Plaintiff's mental limitations were mild to moderate and that he had the residual functional capacity to perform light work. In

arriving at these conclusions, the ALJ performed a two-step process. First, the ALJ determined whether there was an underlying medically determinable physical or mental impairment that could be shown by medically acceptable diagnostic techniques that could reasonably be expected to produce the claimant's pain or other symptoms. Second, the ALJ determined whether the physical or mental impairment could reasonably be expected to produce the claimant's pain or other symptoms. In applying this two-step process, the ALJ found that the underlying impairments produced "some, but not all" of his alleged symptoms. His bipolar disorder symptoms she found would "wax and wane" in severity but were generally "well controlled" with his treatments. With respect to the Crohn's disease, she found that while his condition was "not fully controlled," it had improved steadily since 2009.

In further support of her decision, she found that Dr. Arora's opinions were "not entitled to controlling weight" because they were inconsistent with other evidence in the record, including the reports of the three consultants described above, and his opinion did not reference any objective signs or diagnostic test results supporting his opinions. She therefore found that Plaintiff had the residual functional capacity to perform work at a "light exertional level" and he would be "off task less than 15% during

an eight-hour work day and would be absent fewer than 1.5 days a month."

## II. DISCUSSION

While the Court owes great deference to the ALJ's determination, it must do more than give it a "rubber stamp." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). The ALJ "should give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record. *See*, *Kaminski v. Berryhill*, No. 17-3314, 2018 WL 3341811, at *2 (7th Cir. July 9, 2018) (citing 20 C.F.R. § 404.1527(c)(2)). The reason given by the ALJ for discounting Dr. Arora's opinions was her view that there was insufficient objective evidence in the record to support his opinions. However, this reason ignores the undisputed fact that Plaintiff has disabling Crohn's Disease. Every doctor that has examined or treated Plaintiff has concluded that he has Crohn's disease and that it is disabling. An expert in gastrointestinal medicine must rely in part on his patient's symptoms in diagnosing and treating him. Plaintiff testified in great detail before the ALJ to his symptoms and to his disabilities that resulted from these symptoms. There is no evidence, nor did the ALJ contend, that Plaintiff was prevaricating. There was

absolutely no evidence in this record to contradict either Plaintiff or Dr. Arora. As the ALJ admits in her decision, the consultants hired by the Defendant gave no opinions as to disability (other than the minimal ones described above).

The basis for a finding of disability in this case is the fact that the record is uncontradicted that Plaintiff is unable to work on a job site, no matter how light the work, for the sufficient hours and days necessary to remain employed. The best the Court can determine from the record is that the ALJ came up with the "off task" estimate of 15% of the eight-hour day and the absence estimate of fewer than one and one-half days per month out of whole cloth.

### III. CONCLUSION

Because the ALJ's decision was not based on substantial evidence, the Court grants summary judgment to Plaintiff and denies the Motion for Summary Judgment brought by the Commissioner. **IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: 7/24/2018